IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

|                                    |   |            |
|------------------------------------|---|------------|
| TOM HINKLEY,                       | ) |            |
|                                    | ) |            |
| Plaintiff,                         | ) |            |
|                                    | ) |            |
|                                    | ) | **COMPLAINT** |
|                                    | ) |            |
| LINCOLN NATIONAL LIFE              | ) |            |
| INSURANCE COMPANY,                 | ) |            |
|                                    | ) |            |
| Defendant.                         | ) |            |
|                                    | ) |            |

Plaintiff Tom Hinkley ("Plaintiff") for his claims against Lincoln National Life Insurance Company, d.b.a. Lincoln Financial Group ("Defendant"), states and alleges as follows:

## PARTIES

1. Hinkley is, and at all times relevant to the allegations contained herein has been, a resident of Fargo, North Dakota.

2. Lincoln National Life Insurance Company is, and at all relevant times was, an Indiana corporation authorized to do business in North Dakota as Lincoln Financial Group.

## JURISDICTION AND VENUE

3. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et. seq., and principles of federal common law developed

thereunder, and the Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 1132(e)(1), ERISA § 502(e)(1).

4.      Venue is proper in this district under 29 U.S.C. § 1132(e)(2), ERISA § 502(e)(2), because the case involves an employee benefit plan administered in this district and Defendant does business in this district.

## FACTUAL ALLEGATIONS

5.      Plaintiff restates and realleges paragraphs 1 through 4.

6.      For his Complaint, Plaintiff seeks payment of long-term disability ("LTD") benefits under Buy-up Plan coverage provided by Defendant, which pays 65% of Basic Monthly Earnings less other income benefits and earnings as set forth in Defendant's Group Disability Income Policy ("Policy"), along with his attorney's fees, costs, and disbursements in this action, his claims being governed by ERISA, 29 U.S.C. § 1001, *et seq*.

7.      Plaintiff was hired to perform work as a maintenance supervisor for CC Industries, Inc. on August 31, 2011.

8.      Through his employment with CC Industries, Inc., Defendant's predecessor, Liberty Life Assurance Company of Boston,[1] provided LTD coverage to Plaintiff under

---

[1] Defendant acquired Liberty Life Assurance Company of Boston on or about May 1, 2018, thereby assuming its predecessor's duties and obligations towards Hinkley. Herein, "Defendant" is inclusive of both Lincoln National Life Insurance Company and its predecessor.

its Core Plan, which pays disability benefits at a rate of 55% of Basic Monthly Earnings less other income benefits and earnings as set forth in the Policy.

9.      In January of 2015, Plaintiff was diagnosed with stage IV kidney cancer. Despite this serious diagnosis, Plaintiff continued working for CC Industries, Inc.

10.      During an open enrollment period in November of 2015, Plaintiff elected and Defendant agreed to provide coverage under the Policy's Buy-up Plan, which became effective when Buy-up Plan premiums were deducted from Plaintiff's first paycheck in January of 2016. Under the Buy-up Plan, disability benefits are paid at a rate of 65% of Basic Monthly Earnings less other income benefits and earnings as set forth in the Policy.

11.      In November of 2017, Plaintiff ceased full-time work for CC Industries, Inc., but briefly returned to work on a part-time basis in January of 2018 before being forced to discontinue employment altogether in the spring of that year due to the effects of kidney cancer.

12.      From January of 2016 through the end of his employment with CC Industries, Inc., Plaintiff timely paid premiums in exchange for coverage under the Buy-up Plan.

13.      In February of 2018, Plaintiff filed a claim for LTD benefits, which was approved and assigned a date of disability of November 13, 2017.

15.      Despite the fact that Defendant readily accepted Plaintiff's Buy-up Plan premiums for years, it has refused to pay the increased benefits under Buy-up Plan (65%) and has instead limited payment of benefits to those payable under the Core Plan (55%).

16.      Defendant's refusal to pay the increased Buy-up Plan benefit is based on its assertion that it did not obtain Evidence of Insurability from Plaintiff.

17.     The Policy defines Evidence of Insurability as "a statement of proof of an Employee's medical history upon which acceptance for insurance will be determined by" Defendant.

18.     Plaintiff, both before and after electing the Buy-up Plan coverage during the 2015 open enrollment period, transparently and in good faith provided statements of proof of his medical history, which along with Defendant's repeated acceptance of Plaintiff's Buy-up Plan premiums led him to reasonably rely on coverage under the Buy-up Plan.

## FIRST CLAIM FOR RELIEF

19.     Plaintiff restates and realleges paragraphs 1 through 18.

20.     Plaintiff is a participant in an ERISA plan administered by Defendant.

21.     Under the terms of the plan, Plaintiff is entitled to the increased benefits available to him under Buy-up Plan.

22.     Defendant denied Plaintiff benefits on the basis that Defendant failed to submit Evidence of Insurability. According to Defendant's interpretation of the plan, a participant like Hinkley was required to submit a statement of proof of medical history in order to satisfy the Evidence of Insurability requirement.

23.     Defendant's interpretation of the plan as requiring anything beyond the statements of proof of his medical history previously provided to CC Industries, Inc. and otherwise readily available to Defendant is arbitrary and capricious in light of the communications (or lack of communications) from Defendant to Plaintiff regarding the Evidence of Insurability requirement and his regular payment of Buy-up Plan premiums.

4

24.     Accordingly, Plaintiff seeks benefits due under the terms of the plan pursuant to 29 U.S.C. § 1132(a)(1)(B).

## SECOND CLAIM FOR RELIEF

25.     Plaintiff restates and realleges paragraphs 1 through 24.

26.     Defendant was and is the fiduciary of the plan and was therefore obligated to act with care and prudence and discharge its duties with respect to the plan solely in the interest of the participants and beneficiaries. See 29 U.S.C. § 1104(a)(1).

27.     Defendant breached its fiduciary duties by failing to provide Plaintiff with a summary plan description that could have explained the Evidence of Insurability requirement as being a prerequisite to coverage under the Buy-up Plan.

28.     The documents provided by Defendant to Plaintiff contain technical language unlikely to be read or understood by the average plan participant and are not a summary plan description. Defendant thus breached its fiduciary duty to act in the interest of plan participants when it failed to provide Plaintiff with necessary information regarding enrolling in the plan, entitling him to the remedy of surcharge pursuant to Defendant's misconduct. See 29 U.S.C. § 1132(a)(3).

29.     Defendant breached its fiduciary duties by collecting premiums from Plaintiff who Defendant now claims never had approved coverage under the Buy-up Plan. This misconduct was fraudulent resulting in the mistake of Plaintiff. Alternatively, it was the result of mutual mistake. In either event, Plaintiff is entitled to the remedy of reformation of the plan to strike the Evidence of Insurability requirement. See id.

30.     Plaintiff is also entitled to the remedy of estoppel in light of Defendant's wrongful collection of premiums. See id. Plaintiff reasonably relied on Defendant's wrongful collection of the Buy-up Plan premiums. Even if the entire plan and an adequate plan summary had been provided to him, he reasonably could have believed that Defendant had sufficient proof of medical history from him or that the provision did not apply to him since Defendant began deducting premiums from his paycheck and the Buy-up Plan benefit showed up in his payroll records and other documents.

## PRAYER FOR RELIEF

31.     WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A) Monetary relief in an amount to be determined, but no less than the difference between the monthly LTD benefits due to Plaintiff under the Buy-up Plan and those paid and payable to him under the Core Plan;

B) Pre and post-judgment interest;

C) Attorneys' fees pursuant to 29 U.S.C. § 1132(g);

D) Costs; and

E) Such other relief this Court deems just and proper.

Dated this 6th day of December, 2019.

/s/ Mac Schneider
Mac Schneider
ND ID: 06476
Attorney for Plaintiff
Schneider Law
815 Third Avenue South
Fargo, ND 58103
(701) 235-4481
(701) 235-1107 (fax)
mac@schneiderlawfirm.com