IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

|  |  |  |
|---|---|---|
| TOM HINKLEY,<br><br>            Plaintiff,<br><br>LINCOLN LIFE ASSURANCE<br>COMPANY OF BOSTON,<br>f/k/a LIBERTY LIFE ASSURANCE<br>COMPANY OF BOSTON<br><br>and<br><br>CC INDUSTRIES, INC.<br><br>HENRY CROWN & COMPANY<br>AND AFFILIATES HEALTH AND<br>WELFARE BENEFIT PLAN<br><br>            Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **COMPLAINT** |

Plaintiff Tom Hinkley ("Plaintiff") for his claims against Lincoln Life Assurance Company of Boston (formerly known as Liberty Life Assurance Company of Boston), CC Industries, Inc., and Henry Crown & Company and Affiliates Health and Welfare Benefit Plan ("Defendants"), states and alleges as follows:

## **PARTIES**

1.     Hinkley is, and at all times relevant to the allegations contained herein has been, a resident of Fargo, North Dakota.

1

2.    Lincoln Life Assurance Company of Boston is, and at all relevant times was, an Indiana corporation authorized to do business in North Dakota as Lincoln Financial Group.

3.    CC Industries, Inc. is, and at all relevant times was, a Delaware corporation that sponsors and administers the Henry Crown & Company and Affiliates Health and Welfare Benefit Plan in North Dakota.

4.    Henry Crown & Company and Affiliates Health and Welfare Benefit Plan is an employee welfare benefit plan based in Illinois that administers disability benefits in North Dakota.

## JURISDICTION AND VENUE

5.    This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et. seq., and principles of federal common law developed thereunder, and the Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 1132(e)(1), ERISA § 502(e)(1).

6.    Venue is proper in this district under 29 U.S.C. § 1132(e)(2), ERISA § 502(e)(2), because the case involves an employee benefit plan administered in this district and Defendants do business in this district.

## FACTUAL ALLEGATIONS

7.    Plaintiff restates and realleges paragraphs 1 through 6.

8.    For his Complaint, Plaintiff seeks payment of long-term disability ("LTD") benefits under Buy-up Plan coverage, which pays 65% of Basic Monthly Earnings less other income benefits and earnings as set forth in a Group Disability Income Policy

("Policy"), along with his attorney's fees, costs, and disbursements in this action, his claims being governed by ERISA, 29 U.S.C. § 1001, *et seq*.

9.      Plaintiff was hired to perform work as a maintenance supervisor for CC Industries, Inc. on August 31, 2011.

10.     Through his employment with CC Industries, Inc., Liberty Life Assurance Company of Boston, provided LTD coverage to Plaintiff under its Core Plan, which pays disability benefits at a rate of 55% of Basic Monthly Earnings less other income benefits and earnings as set forth in the Policy.

11.     In January of 2015, Plaintiff was diagnosed with stage IV kidney cancer. Despite this serious diagnosis, Plaintiff continued working for CC Industries, Inc.

12.     During an open enrollment period in November of 2015, Plaintiff elected and was provided coverage under the Policy's Buy-up Plan, which became effective when Buy-up Plan premiums were deducted from Plaintiff's first paycheck in January of 2016. Under the Buy-up Plan, disability benefits are paid at a rate of 65% of Basic Monthly Earnings less other income benefits and earnings as set forth in the Policy.

13.     In November of 2017, Plaintiff ceased full-time work for CC Industries, Inc., but briefly returned to work on a part-time basis in January of 2018 before being forced to discontinue employment altogether in the spring of that year due to the effects of kidney cancer.

14.     From January of 2016 through the end of his employment with CC Industries, Inc., Plaintiff timely paid premiums in exchange for coverage under the Buy-up Plan.

15. In February of 2018, Plaintiff filed a claim for LTD benefits, which was approved and assigned a date of disability of November 13, 2017.

16. Despite the fact that Defendants readily accepted Plaintiff's Buy-up Plan premiums for years, they have refused to pay the increased benefits under Buy-up Plan (65%) and have instead limited payment of benefits to those payable under the Core Plan (55%).

17. Specifically, on or about June 4, 2019, Defendant Lincoln Life Assurance Company of Boston refused to pay the increased Buy-up Plan benefit based on the assertion that it was not provided Evidence of Insurability from Plaintiff.

18. The Policy defines Evidence of Insurability as "a statement of proof of an Employee's medical history upon which acceptance for insurance will be determined[.]"

19. Plaintiff, both before and after electing the Buy-up Plan coverage during the 2015 open enrollment period, transparently and in good faith provided statements of proof of his medical history to Defendants, which along with Defendants' repeated acceptance of Plaintiff's Buy-up Plan premiums led him to reasonably rely on coverage under the Buy-up Plan.

## FIRST CLAIM FOR RELIEF

20. Plaintiff restates and realleges paragraphs 1 through 19.

21. Plaintiff is a participant in an ERISA plan administered by Defendants.

22. Under the terms of the plan, Plaintiff is entitled to the increased benefits available to him under the Buy-up Plan.

4

23.     Defendants denied Plaintiff benefits on the basis that Plaintiff failed to submit Evidence of Insurability. According to Defendants' interpretation of the plan, a participant like Hinkley was required to submit a statement of proof of medical history in order to satisfy the Evidence of Insurability requirement.

24.     Defendants' interpretation of the plan as requiring anything beyond the statements of proof of his medical history previously provided to Defendants through Defendant CC Industries, Inc. and otherwise readily available to Defendants is arbitrary and capricious in light of the communications (or lack of communications) from Defendants to Plaintiff regarding the Evidence of Insurability requirement and his regular payment of Buy-up Plan premiums.

25.     Accordingly, Plaintiff seeks benefits due under the terms of the plan pursuant to 29 U.S.C. § 1132(a)(1)(B).

## SECOND CLAIM FOR RELIEF

26.     Plaintiff restates and realleges paragraphs 1 through 25.

27.     Defendants were and are the fiduciaries of the plan and were therefore obligated to act with care and prudence and discharge its duties with respect to the plan solely in the interest of the participants and beneficiaries. See 29 U.S.C. § 1104(a)(1).

28.     Defendants breached their fiduciary duties by failing to provide Plaintiff with a summary plan description that could have explained the Evidence of Insurability requirement as being a prerequisite to coverage under the Buy-up Plan.

29.     The documents provided by Defendants to Plaintiff contain technical language unlikely to be read or understood by the average plan participant and are not a summary

plan description. Defendants thus breached their fiduciary duty to act in the interest of plan participants when they failed to provide Plaintiff with necessary information regarding enrolling in the plan, entitling him to the remedy of surcharge pursuant to Defendants' misconduct. See 29 U.S.C. § 1132(a)(3).

30.     Defendants breached their fiduciary duty by collecting premiums from Plaintiff who Defendants now claims never had approved coverage under the Buy-up Plan. This misconduct was fraudulent resulting in the mistake of Plaintiff. Alternatively, it was the result of mutual mistake. In either event, Plaintiff is entitled to the remedy of reformation of the plan to strike the Evidence of Insurability requirement. See id.

31.     Plaintiff is also entitled to the remedy of estoppel in light of Defendants' wrongful collection of premiums. See id. Plaintiff reasonably relied on Defendants' wrongful collection of the Buy-up Plan premiums. Even if the entire plan and an adequate plan summary had been provided to him, he reasonably could have believed that Defendants had sufficient proof of medical history from him or that the provision did not apply to him since Defendants began deducting premiums from his paycheck and the Buy-up Plan benefit showed up in his payroll records and other documents.

## **PRAYER FOR RELIEF**

32.     WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A) Monetary relief in an amount to be determined, but no less than the difference between the monthly LTD benefits due to Plaintiff under the Buy-up Plan and those paid and payable to him under the Core Plan;

B) Pre and post-judgment interest;

C) Attorneys' fees pursuant to 29 U.S.C. § 1132(g);

D) Costs; and

E) Such other relief this Court deems just and proper.

Dated this 13th day of May, 2020.

/s/ Mac Schneider
Mac Schneider
ND ID: 06476
Attorney for Plaintiff
Schneider Law
815 Third Avenue South
Fargo, ND 58103
(701) 235-4481
(701) 235-1107 (fax)
mac@schneiderlawfirm.com